**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Donald Douglas BREIER,**
**Defendant-Appellant.**

No. 86–5140.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 2, 1987.

Decided March 16, 1987.

Concurrence Filed March 23, 1987.

Charles C. Lee, Los Angeles, Cal., for plaintiff-appellee.

Theodora Poloynis-Engen, Alexander W. Kirkpatrick, Pasadena, Cal., for defendant-appellant.

Before SNEED, FARRIS and NOONAN, Circuit Judges.

SNEED, Circuit Judge:

Donald Breier appeals from his conviction of five violations of 18 U.S.C. § 922(a)(1), unlicensed dealing in firearms. Breier argues that the recently-enacted Firearms Owners' Protection Act should apply retroactively to his case, thereby warranting a new trial. Because we find that the federal savings clause, 1 U.S.C. § 109, mandates non-retroactivity, we affirm the judgment of conviction.

## I.

### FACTS AND PROCEEDINGS BELOW

Donald Breier owns a design telecommunications system company, and has a keen interest in firearms. Beginning sometime in the summer of 1984, Breier began renting tables at gun shows, where he engaged in the trading, selling and purchasing of firearms. In April, 1985, agent Dan Smith of the Bureau of Alcohol, Tobacco and Firearms (ATF) began investigating the defendant after receiving information that Breier was trading in firearms on a regular basis. Smith spoke with Breier over the telephone on April 19, and warned him he was required to obtain a federal firearms license if he was buying or selling firearms on any sort of regular basis. Breier assured Smith that he was a collector only, and was not regularly trading in firearms.

The ATF investigation into Breier's activities continued. Over the next year and a half, Agent Smith and other ATF agents attended gun shows in an undercover capacity and purchased firearms from Breier. Breier realized a gross profit on these transactions, but claims he suffered a net loss after the cost of renting the tables is subtracted.

In February, 1986, Breier was indicted by a grand jury on five counts of violating 18 U.S.C. § 922(a)(1), unlicensed dealing in firearms. A jury trial commenced on April 1, 1986, and Breier was convicted by the jury on all five counts. On May 11, Breier was sentenced to a term of forty-five days in the custody of the Attorney General, five years probation, and a $5000.00 fine. Only a few days later, May 19, 1986, the President signed the Firearms Owners' Protection Act, Pub.L. No. 99–308, 100 Stat. 449 (1986). The 1986 Act became effective 180 days after enactment, *i.e.,* November 15, 1986. *See* Pub.L. No. 99–308, § 110(a), 100 Stat. at 460. As will be seen, the 1986 Act was considered by Breier to be more favorable to his position than was the law under which he was tried and convicted. On May 20, Breier timely filed a notice of appeal.

## II.

### DISCUSSION

Section 922(a)(1) of 18 U.S.C. provides, in pertinent part, that it is unlawful "for any person, except a ... licensed dealer, to engage in the business of ... dealing in firearms." 18 U.S.C. § 921(a)(11) provides, in relevant part, that a "dealer" is "any person engaged in the business of selling firearms ... at wholesale or retail." The law at the time the defendant was convicted did not further define the term "dealer" by setting forth a definition of the term "engaged in the business." Courts have fashioned their own definitions of the term. For example, we have previously stated "that where transactions of sale, purchase or exchange of firearms are regularly entered into in expectation of profit, the conduct amounts to engaging in business." *United States v. Van Buren,* 593 F.2d 125, 126 (9th Cir.1979) (per curiam). In *United States v. Wilmoth,* 636 F.2d 123 (5th Cir. Unit A 1981), the Fifth Circuit stated that to prove the status of the accused as one engaged in the business of dealing in firearms, "the Government must show a greater degree of activity than the occasional sale of a hobbyist." *Id.* at 125. "It is enough to prove that the accused has guns

on hand or is ready and able to procure them for the purpose of selling them from time to time to such persons as might be accepted as customers." *Id.; accord United States v. Carter,* 801 F.2d 78, 82 (2d Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 657, 93 L.Ed.2d 712 (1986); *United States v. Burgos,* 720 F.2d 1520, 1527 n. 8 (11th Cir.1983). Both parties agree that the jury instruction in this case was in accordance with interpretations of § 922(a)(1) given by this and other circuits.[1]

Under the revised law that went into effect on November 15, 1986, the definition of the offense, 18 U.S.C. § 922(a)(1), and the definition of a firearms "dealer," 18 U.S.C. § 921(a)(11)(A), remain the same. However, section 101 of the 1986 Act provides further definition with respect to the term "engaged in the business" as follows:

(21) The term 'engaged in the business' means—

. . .

(C) As applied to a dealer in firearms, as defined in section 921(a)(11)(A), a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms, but such term shall not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms;

(22) The term 'with the principal objective of livelihood and profit' means that the intent underlying the sale or disposition of firearms is predominantly one of obtaining livelihood and pecuniary gain, as opposed to other intents, such as improving or liquidating a personal firearms collection.

Pub.L. No. 99–308, § 101, 100 Stat. at 450.

Although subsections 921(a)(21) and 921(a)(22) are not included among the list of retroactive sections found in section 110(b) of the 1986 Act, Breier argues that we should apply these sections retroactively and remand for a new trial. To prevail Breier also faces the formidable obstacle of the federal savings clause, 1 U.S.C. § 109, which reads as follows:

The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

Congress enacted the forerunner of § 109 "to abolish the common-law presumption that the repeal of a criminal statute resulted in the abatement of 'all prosecutions which had not reached final disposition in the highest court authorized to review them.'" *Warden v. Marrero,* 417 U.S. 653, 660, 94 S.Ct. 2532, 2536, 41 L.Ed.2d 383 (1974) (quoting *Bradley v. United States,* 410 U.S. 605, 607, 93 S.Ct. 1151,

---

1. The court instructed the jury as follows:

The term "dealer", for purposes of this case, is defined as "any person engaged in the business of selling firearms or ammunition at wholesale or retail ..."

A business is an activity which occupies a person's time, attention and labor, with some regularity or continuity, for the purpose of livelihood or profit. One may be engaged in a business even though the business does not require all, or even a substantial portion, of his working time. Nor is it necessary to show that a profit was actually made.

A person engages in the business of dealing in firearms if he has guns on hand or is ready and able to procure them, in either case for the purpose of selling some or all of them to such persons as he might from time to time accept as customers. Such business need not be the defendant's primary business, nor must he make a certain amount of profit from the business. The statute is aimed at those who hold themselves out as a source of firearms, or those who engage in regular and repeated buyings and/or sellings of firearms, as opposed to an isolated or occasional transaction.

The distinction between collecting as a hobby and dealing as a business is not unknown to the law and where transactions of sale, purchase or exchange of firearms are regularly entered into in expectation of profit, the conduct amounts to engaging in business. Reporter's Transcript at 3–92 to 3–93.

1153, 35 L.Ed.2d 528 (1973)); *see Hamm v. City of Rock Hill,* 379 U.S. 306, 314, 85 S.Ct. 384, 390, 13 L.Ed.2d 300 (1964).[2]

Although the savings clause on its face applies to the "repeal of any statute," it has been held to apply to statutory amendments as well. *E.g., United States v. Mechem,* 509 F.2d 1193, 1194 n. 3 (10th Cir. 1975) (per curiam); *see White v. Warden,* 566 F.2d 57, 59 (9th Cir.1977). In *Marrero,* the Court held that the prohibition on parole eligibility under 26 U.S.C. § 7237(d), which was repealed while the defendant was serving his sentence, was preserved by the federal savings clause. 417 U.S. at 659–64, 94 S.Ct. at 2536–39. The Court stated that the determinative question is whether the repealed prohibition is a "penalty, forfeiture, or liability" saved from extinguishment by 1 U.S.C. § 109. *Id.* at 660, 94 S.Ct. at 2536. *Marrero* was the last opportunity for the Court to consider § 109.

Lower courts have not adopted a uniform approach to § 109.[3] There have been only five post-*Marrero* cases from this circuit discussing § 109, and none provides much assistance to deciding this case. *See United States v. Edmonson,* 792 F.2d 1492, 1498 n. 5 (9th Cir.1986) (finding it unnecessary to reach the § 109 issue), *cert. denied,*

— U.S. ——, 107 S.Ct. 892, 93 L.Ed.2d 844 (1987); *Mendoza v. Wight Vineyard Management,* 783 F.2d 941, 945 (9th Cir. 1986) (per curiam) (finding a waiver of the § 109 argument); *Friel v. Cessna Aircraft Co.,* 751 F.2d 1037, 1039 (9th Cir.1985) (per curiam) (declining to apply § 109 to a statute of limitations in a civil context); *United States v. Spawr Optical Research, Inc.,* 685 F.2d 1076, 1078 n. 2 (9th Cir.1982) (applying § 109 to find no abatement), *cert. denied,* 461 U.S. 905, 103 S.Ct. 1875, 76 L.Ed.2d 807 (1983), *White,* 566 F.2d at 61–62 (applying § 109 in conjunction with four other factors to find nonretroactivity).

Guided by the analysis used by the Supreme Court in *Marrero,* we find that 1 U.S.C. § 109 bars retroactive application of the pertinent portion of section 101 of the 1986 Act. That portion of section 101 repealed a "liability" to which Breier previously was subject. Congress, as already pointed out, included a provision in the 1986 Act specifying which sections were to have retroactive effect and the sections in question here were not included in that list. This precludes the finding of an implied congressional intent of retroactivity, as the court found in *Mechem,* 509 F.2d at 1195–96. This returns us to § 109, which directs

---

**2.** Anomalous results developed at common law when a criminal statute was repealed and reenacted with different penalties. A criminal defendant who was fortunate enough to have his offense made the subject of stiffer penalties was able to skate completely free. At common law the repealed statute could not be charged, nor could the replacement statute in view of *ex post facto* prohibitions. *See United States v. Tynen,* 78 U.S. (11 Wall.) 88, 20 L.Ed. 153 (1871). The defendant's prosecution was said to "technically" abate. In *Hamm,* 379 U.S. at 314, 85 S.Ct. at 390, the Supreme Court concluded that Congress adopted the original federal saving statute in 1871 "to obviate mere technical abatement such as that illustrated by the application of the rule in *Tynen.*" A nontechnical abatement of prosecution occurred at common law when a statute was changed so that the conduct in question was no longer a crime. The Supreme Court has applied § 109 to avoid nontechnical as well as technical abatements. *See, e.g., Allen v. Grand Cent. Aircraft Co.,* 347 U.S. 535, 553–55, 74 S.Ct. 745, 755–56, 98 L.Ed. 933 (1954); *Hertz v. Woodman,* 218 U.S. 205, 214–18, 30 S.Ct. 621, 623–24, 54 L.Ed. 1001 (1910); *United States v. Reisinger,* 128 U.S. 398, 401–02, 9 S.Ct.

99, 101–02, 32 L.Ed. 480 (1888). The Court has more recently indicated that focus on whether a prosecution would "technically abate" under the common law rule is not the proper analysis. *Marrero,* 417 U.S. at 660 n. 11, 94 S.Ct. at 2537 n. 11.

**3.** A recent district court opinion examined the various judicial approaches in recent years to § 109, and broke them down into three categories:

"(1) those which have embraced a strict, technical, and literal approach in applying § 109 with undeviating harshness; (2) those which have adopted a considerably more flexible approach based on the totality of the circumstances surrounging a given piece of legislation; and (3) those which have not really taken a stance on the role of § 109 in modern-day statutory construction, but which at the same time, have exhibited remarkable creativity in avoiding that precise question."

*United States v. Jimicum,* 608 F.Supp. 1530, 1539 (E.D.Wash.1985) (footnotes omitted), *rev'd sub. nom. United States v. Edmonson,* 792 F.2d 1492 (9th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 892, 93 L.Ed.2d 844 (1987).

that the guilt of Breier be measured by 18 U.S.C. § 922(a)(1), with its accompanying judicial construction, as it stood prior to the effective date of the 1986 Act.

The legislative history of the 1986 Act shows that Congress was well aware of the judicial interpretations of the term "engaged in the business." [4] It enacted new subsections 921(a)(21) and 921(a)(22) in order to limit the conduct deemed to be criminal. This, to repeat, repealed a "liability." We must presume that Congress was familiar with the federal savings clause, and had it intended to alter the effect given to conduct before the amendment it would have so indicated.

Breier erroneously relies on *United States v. Blue Sea Line*, 553 F.2d 445 (5th Cir.1977). In *Blue Sea Line*, the Fifth Circuit found that the repeal of a criminal statute and replacement of it with penal civil sanctions was "procedural" in nature and thus not affected by § 109. *Id.* at 448–50. The court found that in enacting the amendments in question, "Congress was clearly not engaged in ameliorating criminal punishment.... On the contrary, its concern was to tighten enforcement of the existing monetary sanctions." *Id.* at 450. Not so in this case. Ameliorating substantive criminal liability is exactly what Congress intended by enacting the portion of the 1986 Act with which we are concerned. Thus, *Blue Sea Line* and other cases making the procedure/penalty distinction are inapposite.

We take comfort in the recent Second Circuit opinion in *United States v. Carter*, 801 F.2d 78 (2d Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 657, 93 L.Ed.2d 712 (1986). There the court was presented with the precise question at issue here, whether new subsections 921(a)(21) and 921(a)(22) should be applied retrospectively. The court concluded they should not be:

> [E]ven if we believed these amendments to § 921 so narrowed the scope of the activities covered by § 922(a)(1) that defendants' conduct would be excluded, we would not apply them retroactively, since such retrospectivity is plainly contrary to Congress's intent. The [1986] Act provides that the amendments to § 921 do not become effective until 180 days after enactment, *i.e.*, November 15, 1986.

*Id.* at 83.

The judgment of conviction is affirmed.[5]

AFFIRMED.

NOONAN, Circuit Judge, concurring:

I concur because of the express intent of Congress to make the amendments to the Firearms Owners' Protection Act effective only 180 days after the enactment of the law. 100 Stat. 461 (1986). I do not believe that the definition is "a liability" in the sense of the Federal Savings Clause, 1 U.S.C. § 109. As the Supreme Court has said, the words "penalty" "forfeiture" and "liability" are "synonymous with the word 'punishment' in connection with crimes of the highest grade." *U.S. v. Reisinger*, 128 U.S. 398, 9 S.Ct. 99, 32 L.Ed.2d 480 (1888), quoted *Warden v. Marrero*, 417 U.S. 653, 661, 94 S.Ct. 2532, 2537, 41 L.Ed.2d 383 (1974). It is a violent stretch of language to treat a definition as a punishment.

---

**4.** *See* 131 Cong.Rec. S9127 (daily ed. July 9, 1985); 131 Cong.Rec. S8689 (daily ed. June 24, 1985) (statement of Sen. Hatch).

**5.** *United States v. Adair*, 649 F.Supp. 61 (S.D. Tex.1986), is not inconsistent with our opinion. The *Adair* court found that the savings clause did not preserve former 18 U.S.C.App. § 1202(a), repealed by the 1986 Act, which along with 18 U.S.C. § 922 prohibited the possession of a firearm by a convicted felon. *Id.* at 62. That offense is now proscribed solely by § 922, which under the 1986 Act contains a different definition of "conviction" than did § 1202(a). The court held that the prosecution

could not proceed under the former statute because such a proceeding would frustrate congressional intent. Although not directly faced with the question, the *Adair* court assumed, and apparently the government conceded, that the redefinition of "conviction" would apply in prosecutions under § 922 for offenses committed before passage of the 1986 Act. *Id. Adair* is distinguishable because the redefinition of "conviction" does not alter the effect given to conduct before the amendment, but rather merely alters the class of persons for whom the proscribed conduct is prohibited.