**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Donald Douglas BREIER,**
**Defendant-Appellant.**

No. 86–5140.

United States Court of Appeals,
Ninth Circuit.

Sept. 16, 1987.

Theodora Poloynis-Engen, Alexander W. Kirkpatrick, Pasadena, Cal., for defendant-appellant.

Steven Zwick, Santa Ana, Cal., for defendant-appellant on rehearing.

Before SNEED, FARRIS and NOONAN, Circuit Judges.

### ORDER

Appellant's petition for rehearing is denied. Judge Noonan's dissent from the denial of the petition for rehearing is attached.

NOONAN, Circuit Judge, dissenting from denial of rehearing:

Donald Douglas Breier is a hobbyist who has been turned into a criminal by the too vivid zeal of government agents and prosecutors. Like many other hobbyists—stamp collectors for example—he swapped parts of his collection and sold and bought other parts. Admittedly guns are more dangerous than stamps, and Congress has seen fit to regulate gun dealers. But unlike stamps, guns are the subject of constitutional protection: "the right of the people to keep and bear arms shall not be infringed." United States Constitution, Amendment II. Congress has regulated guns, sensitive to the Second Amendment and to the difference between hobbyists and those making a living out of the gun business.

The Committee on the Judiciary took formal note of the complaint that "enforcement of the Gun Control Act had been overzealous." H.R.Rep. No. 99–495 (1986), 99th Cong., 2nd Sess. *reprinted,* 1986 *U.S. Code Cong. & Ad News,* 1327, 1329. In the light of such complaint and other testimony, the Judiciary Committee reported, and Congress enacted, legislation pointedly entitled "Firearms Owners' Protection Act", 100 Stat. 449 (1986). The Act begins with two congressional findings. First, Congress finds that Second Amendment and other constitutional rights of citizens "re-

quire additional legislation to correct existing firearms statutes *and enforcement policies"* (emphasis supplied). Second, Congress finds that:

> ... additional legislation is required to reaffirm the intent of the Congress, as expressed in section 101 of the Gun Control Act of 1968, that "it is not the purpose of this title to place any undue or unnecessary Federal restrictions or burdens on law-abiding citizens with respect to the acquisition, possession, or use of firearms appropriate to the purpose of hunting, trapshooting, target shooting, personal protection, or any other lawful activity, and that this title is not intended to discourage or eliminate the private ownership or use of firearms by law-abiding citizens for lawful purposes." 100 Stat. 449 (1986).

After making these findings Congress went on to amend 18 U.S.C. § 921 by *inter alia* defining the term "engaged in business." The definition sets out that to be a dealer one must have "the principal objective of livelihood and profit" from the trade.

Called upon to construe 18 U.S.C. § 921 in the light of the Firearms Owners' Protection Act, a court should not hesitate to respond to the congressional concern of correcting existing enforcement policy, and a court should not fail to acknowledge the explicit declaration that Congress in this legislature is reaffirming the intent of the Gun Control Act of 1968. The 1986 amendment makes crystal-clear how the old statute should be read: the law was not meant to reach the hobbyist who is not making his living out of trading in guns.

The opinion of the court relies on 1 U.S.C. § 109. *United States v. Breier,* 813 F.2d 212, 214 (9th Cir.1987). The statute is addressed to "the repeal of any statute." It is not obvious that the Firearms Owners' Protection Act is, in general or in the particular section on dealers, a repealing statute; certainly the term "repeal" is not employed and the text of the Act did not alert Congress to the possibility that its legislative clarification of particular subsections of earlier law would be read in conjunction with the statute on the repeal of a statute.

The repeals statute is in any case applicable only to "penalties, forfeitures or liabilities." A change in the definition of the terms of a statute is not a change in a "penalty, forfeiture or liability." Those terms are "synonymous with the word punishment in connection with crimes of the highest grade." *United States v. Reisinger,* 128 U.S. 398, 9 S.Ct. 99, 32 L.Ed. 480 (1888). Neither the Supreme Court nor this Circuit is to the contrary. Rather, the federal savings clause has been carefully applied where a real penalty has been changed and the old penalty must be preserved. *Warden v. Marrero,* 417 U.S. 653, 660, 94 S.Ct. 2532, 2536, 41 L.Ed.2d 383 (1974); *White v. Warden,* 566 F.2d 57, 59 (9th Cir.1977). There is no basis in controlling authority for the court's expansive reading that treats a definitional adjustment as the extinguishment of a penalty.

Nor is there any social justification for the court's gloss on the statute. When it is clear, by congressional amendment, that a statute was never meant to punish certain conduct and never will again punish that conduct in the future, what is the point of punishing someone for its violation? Deterrence is not served since the crime can never be committed again. Restraint is unnecessary for the conduct is now legal. Retribution cannot be served because any predisposition to repeat the act will be to repeat an act no longer criminal. Deterrence is not achieved because there is no need to dissuade others from committing what is no longer a crime. *Comment, Today's Law and Yesterday's Crime: Retroactive Application of Ameliorative Criminal Legislation,* 121 U.Pa.L.Rev. 120, 149 (1972).

The court falls back on a second level of analysis, contending that retroactivity would be "plainly contrary to Congress's intent" because Congress explicitly provided that the amendments did not become effective until November 15, 1986. *Breier, supra* at 216, invoking *United States v. Carter,* 801 F.2d 78 (2nd Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 657, 93 L.Ed.2d 712 (1986). Reliance on an inference made from the statute's effective date is misplaced. The intention of Congress does not

**1368**

need to be inferred. Congressional intention is explicitly stated in the findings that introduce the statute.

In light of that strong and clear expression, it is incumbent on us to interpret the new law as a clarification of the old, not as a repeal. To say that retroactivity is plainly contrary to Congress' intent is to put implication and inference above explicitness and specificity; to honor the congressional will in word and ignore it in deed; to disappoint the hopes and thwart the purpose of the sponsors of the legislation which the court purports to interpret.

My reading of the statute leads me to address the government's fall-back position that even in terms of the 1986 amendments Breier is guilty. The court notes that Breier owns a design telecommunications system, and it does not dispute Breier's claim that he realized a net loss on his firearm dealings. The evidence did not show him to be one who devoted "time, attention and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit." Even if it were granted that he might have sought profit, he did not seek his livelihood in this way. Breier was not a dealer.

To recapitulate: the court inexplicably prefers to divine congressional intent by inference from a general statute not in terms applicable; it ignores the clear expression of congressional intent in a recent relevant statute clarifying the earlier law; and it achieves the socially regressive objective of punishing a person for conduct that is now not criminal.

I repent my earlier concurrence and would reverse Breier's conviction.