861 F.2d 1234
 UNITED STATES of America, Plaintiff-Appellee,
v.
Nancy P. SCHUMANN, as the Personal Representative of the
Estate of Richard P. Schumann, deceased,
Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
ONE ASSORTMENT OF EIGHTY-TWO (82) FIREARMS, Defendant-Appellant.
 Nos. 87-3099, 87-3785.
 United States Court of Appeals,
Eleventh Circuit.
 Dec. 19, 1988.
 
 David H. Townsend, Tampa, Fla., for defendant-appellant.
 R.W. Merkle, U.S. Atty., Susan M. Daltuva, Warren A. Zimmerman, Asst. U.S. Attys., Tampa, Fla., for plaintiff-appellee.
 Appeals from the United States District Court for the Middle District of Florida.
 Before VANCE and KRAVITCH, Circuit Judges, and HENDERSON, Senior Circuit Judge.
 HENDERSON, Senior Circuit Judge:
 
 
 1
 This is a consolidated appeal from a criminal conviction in No. 87-3099 and the grant of a motion for summary judgment in No. 87-3785, a civil forfeiture action. For the reasons stated below, we remand No. 87-3099 with directions to vacate the judgment of conviction and affirm the district court's judgment of forfeiture in No. 87-3785.
 
 
 2
 From October to December, 1985, the Bureau of Alcohol, Tobacco and Firearms (BATF) conducted an investigation of the defendant Richard P. Schumann, whom it believed to be engaged in the unlicensed sale of firearms in violation of 18 U.S.C. Sec. 922(a)(1). On several occasions during this three-month period, undercover agents purchased several firearms from Schumann at the Ardor Gun Shop in Tampa, Florida. On December 17, 1985, BATF seized an assortment of eighty-two firearms from the premises during the execution of a search warrant. In February, 1986 the government filed a civil complaint for forfeiture of the firearms confiscated during the search. In May, 1986 the defendant was indicted on one count of violating Sec. 922(a)(1) of the Gun Control Act of 1968. Four days later on May 19, 1986, the President signed Public Law 99-308, the Firearms Owners' Protection Act, to become effective on November 15, 1986.
 
 
 3
 By stipulation of both parties, the civil action was stayed pending the disposition of the criminal case. The stay was lifted following Schumann's conviction in December, 1986 for dealing in firearms without a license in violation of 18 U.S.C. Sec. 922(a)(1). The defendant was given a three-year suspended sentence with three years probation and fined $1,000.00, which he paid into the registry of the court. The district court reopened the civil action and the government moved for summary judgment in April, 1987. In June, following the defendant's failure to respond to the government's motion, the district court granted summary judgment in favor of the government. Due to a technical error, the government moved for a corrected judgment of forfeiture, which the district court granted on October 21, 1987. Schumann died in the interim on October 20, 1987. As stated, the civil and criminal actions were consolidated for appeal.
 
 
 4
 The sole issue raised in both appeals is whether the Firearms Owners' Protection Act applies retroactively to Schumann, who was convicted after the Act's effective date of engaging in the business of dealing in firearms without a license. Schumann contended that the district court erred when it refused to give a jury instruction incorporating the new definitions and standards of proof required for a conviction under the Act. Similarly, in the civil appeal, the personal representative of his estate claims the 1986 Act applies so as to defeat the government's entitlement to forfeiture.
 
 
 5
 We note at the outset that Schumann's death rendered moot his criminal appeal. It is a well-settled principle of law that all criminal proceedings abate ab initio when the defendant dies pending direct appeal of his criminal conviction. United States v. Pauline, 625 F.2d 684, 684 (5th Cir.1980); United States v. Siano, 463 F.2d 778, 778 (5th Cir.1972); see also United States v. Romano, 755 F.2d 1401, 1402 (11th Cir.1985) (same result where defendant died pending the government's petition for rehearing.)[1] Accordingly, we dismiss the criminal appeal as moot and remand to the district court with directions to vacate the judgment and dismiss the indictment. United States v. Romano, supra, 755 F.2d at 1402; United States v. Lewis, 676 F.2d 508, 510 n. 1 (11th Cir.), cert. denied, 459 U.S. 976, 103 S.Ct. 313, 74 L.Ed.2d 291 (1982); United States v. Holt, 650 F.2d 651, 652 (5th Cir.1981); United States v. Pauline, 625 F.2d at 684; United States v. Siano, supra, 463 F.2d at 778.
 
 
 6
 Schumann's estate is not entitled to a return of the $1,000.00 fine, paid prior to his death, which was assessed against him as a part of his sentence. We noted in Pauline that "if the sentence included a fine, abatement ab initio prevents recovery against the estate." United States v. Pauline, 625 F.2d at 684. This rule, however, appears to apply only where the fine is uncollected at death. In Dyar v. United States, 186 F. 614 (5th Cir.1911), a $1,000.00 penalty was held to have abated with the death of the defendant, entitling his estate to a fund deposited as security for its payment. The court noted in dictum, "If while he had lived it had been collected, he would have been punished by the deprivation of that amount of his estate; but upon his death there is no justice in punishing his family for his offense." Dyar, supra, 186 F. at 623 (quoting United States v. Pomeroy, 152 F. 279, 282 (S.D.N.Y.1907), reversed on other grounds sub nom., 164 F. 324 (2d Cir.1908)). Because Schumann paid the fine before his demise, the penalty operated as a punishment to him rather than to his estate. See Annotation, Abatement Effects of Accused's Death Before Appellate Review of Federal Criminal Conviction, 80 ALR Fed. 446, 453-55 (1986) (collecting cases).
 
 
 7
 We turn next to consideration of the propriety of the district court's grant of the government's motion for summary judgment in the forfeiture action. The court of appeals must independently review the district court's order granting or denying summary judgment and apply the same legal standards that controlled the decision of that court. Mercantile Bank & Trust Co. v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir.1985). The applicable standard in a motion for summary judgment is whether the movant has sufficiently demonstrated that no genuine dispute exists as to any material fact in the case. F.R.Civ.P. Rule 56(c), 28 U.S.C.A.; Mercantile Bank & Trust Co., supra, at 841; Clemons v. Dougherty County, Georgia, 684 F.2d 1365, 1368 (11th Cir.1982). Although summary judgment may well have been proper at the time it was granted, Schumann's death pending the criminal appeal directly affects the civil aspect of this litigation.
 
 
 8
 Pauline mandates that the abated conviction may not be used as the basis of liability in any related civil litigation against the estate. 625 F.2d at 684. In the usual case, an issue of ultimate fact that has been determined by a valid and final judgment on the merits cannot be relitigated between those parties in a future lawsuit under the doctrine of collateral estoppel. Precision Air Parts, Inc. v. AVCO Corp., 736 F.2d 1499, 1501 (11th Cir.1984), cert. denied, 469 U.S. 1191, 105 S.Ct. 966, 83 L.Ed.2d 970 (1985). Collateral estoppel also relates to issues of ultimate fact established in a criminal trial which are controverted in a subsequent civil proceeding. Thus, an issue resolved in the government's favor in a criminal proceeding may not be challenged by the defendant in an attendant civil suit brought by the government. Kennedy v. Mendoza-Martinez, 372 U.S. 144, 157, 83 S.Ct. 554, 561, 9 L.Ed.2d 644, 654 (1963); Tomlinson v. Lefkowitz, 334 F.2d 262, 264 (5th Cir.1964), cert. denied, 379 U.S. 962, 85 S.Ct. 650, 13 L.Ed.2d 556 (1965).
 
 
 9
 In the case sub judice, however, the defendant's death pending his appeal serves to abate the conviction ab initio as pointed out earlier. In essence, Schumann stands as if he never had been indicted or convicted. In its memorandum of law in support of the motion for summary judgment, the government relied exclusively on witness testimony culled from Schumann's criminal trial to show probable cause in instituting the forfeiture action. In addition, the government offered affidavits and exhibits admitted into evidence at the criminal trial, a videotaped deposition of a government agent who had investigated Schumann's activities, and transcripts of tape recorded conversations between Schumann and undercover agents--all of which derived from the earlier criminal proceeding. The district court, in granting the government's summary judgment motion, incorporated by reference the accompanying memorandum of law which depended solely on issues of fact established in the criminal trial. Through no fault of the district court, summary judgment in this action is no longer appropriate by virtue of Schumann's death during the pendency of his appeal. Therefore, abatement of the defendant's conviction obliterates the basis of the motion for summary judgment, which ordinarily would require a reversal and remand to the district court for a determination on the merits. However, because both parties have stipulated to the operative facts giving rise to the institution of the government's forfeiture action, we may proceed to address the merits of the legal issues posed by Schumann's civil appeal.
 
 
 10
 Title 18 U.S.C. Sec. 924(d) (1982) provides for the seizure and forfeiture of any firearm or ammunition seized in connection with a violation of the Gun Control Act of 1968, 18 U.S.C. Sec. 921 et seq. Schumann was charged in December, 1985 with violating 18 U.S.C. Sec. 922(a)(1), which at that time prohibited "any person ... except a ... licensed dealer, to engage in the business of ... dealing in firearms." The applicable definition of "dealer" at the time of Schumann's alleged offense was "any person engaged in the business of selling firearms or ammunition at wholesale or retail." 18 U.S.C. Sec. 921(a)(11).
 
 
 11
 On May 19, 1986, President Reagan signed the Firearms Owners' Protection Act, Pub.L. No. 99-308, 100 Stat. 449 (1986). The 1986 Act amended and clarified the Gun Control Act of 1968. It substituted, inter alia, a narrower definition of "dealer" by further defining the term "engaged in the business" as it applied to a dealer in firearms:
 
 
 12
 [A] person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms, but such term shall not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms.
 
 
 13
 18 U.S.C. Sec. 921(a)(21)(C) (Supp.1987).[2] Also, under the 1986 Act, the term "with the principal objective of livelihood and profit" specifically does not include "improving or liquidating a personal firearms collection." 18 U.S.C. Sec. 921(a)(22) (Supp.1987). The new definition of "engaged in the business" would absolve Schumann of liability in the forfeiture action if, as he claimed, he was merely closing out his gun business and liquidating his inventory. While the government presented evidence of firearms sales by Schumann to undercover BATF agents during the period covered in the indictment, there was no proof of firearms purchases, much less a proven pattern of "repetitive purchase and resale." The question then arises whether the 1986 Act should be applied retroactively to Schumann's case.
 
 
 14
 The Ninth Circuit Court of Appeals recently considered whether this particular portion of the 1986 Act applies retroactively. In United States v. Breier, 813 F.2d 212 (9th Cir.1987), cert. denied, --- U.S. ----, 108 S.Ct. 1222, 99 L.Ed.2d 423 (1988), the defendant, Breier, was convicted in April, 1986 of five counts of violating 18 U.S.C. Sec. 922(a)(1), unlicensed dealing in firearms. The next month, the President signed the Firearms Owners' Protection Act, and Breier timely appealed. Although Schumann was tried and convicted after the effective date of the new Act, he anticipated, as did Breier, a more favorable disposition of his case if the 1986 Act applied retroactively. We join the Ninth Circuit in our agreement that the further definition of "engaged in the business" as it appears in the 1986 Act has prospective application only.
 
 
 15
 Whenever there has been a statutory change in the law, the general rule is that the new statute governs cases pending on the date of its enactment unless manifest injustice would result or there is statutory direction or legislative history to the contrary. Bradley v. School Board of Richmond, 416 U.S. 696, 711-14, 94 S.Ct. 2006, 2016-17, 40 L.Ed.2d 476, 488-90 (1974); United States v. Fernandez-Toledo, 749 F.2d 703, 705 (11th Cir.1985); Central Freight Lines, Inc. v. United States, 669 F.2d 1063, 1069 (5th Cir. Unit A 1982); Corpus v. Estelle, 605 F.2d 175, 180 (5th Cir.1979), cert. denied, 445 U.S. 919, 100 S.Ct. 1284, 63 L.Ed.2d 605 (1980). For the reasons discussed below, we find that both congressional intent and the "formidable obstacle" of the federal savings clause preclude the adoption of the general rule in this instance and that the statute in effect at the time of the violation properly controlled the rights of the parties.
 
 
 16
 Express congressional intent to confer retroactivity upon this portion of the 1986 Act is absent from the legislative record. Section 110(b) of the Act provides that certain amendments "shall be applicable to any action, petition, or appellate proceeding pending on the date of the enactment of this Act." Pub.L. No. 99-308, 100 Stat. 449, 461 (1986). Section 101, which includes the new definition of "engaged in the business," is not one of those amendments given retroactive effect under section 110(b). Nor do we find any implied congressional grant of retroactivity. On facts similar to those in the instant case, the Second Circuit Court of Appeals found such retrospectivity "plainly contrary to Congress's intent." United States v. Carter, 801 F.2d 78, 83 (2d Cir.), cert. denied, 479 U.S. 1012, 107 S.Ct. 657, 93 L.Ed.2d 712 (1986). As the Breier court noted, legislative history indicates that Congress was cognizant of judicial interpretations of the term "engaged in the business." Breier, 813 F.2d at 216. "We must presume that Congress was familiar with the federal savings clause, and had it intended to alter the effect given to conduct before the amendment it would have so indicated." Id.
 
 
 17
 The federal savings clause, 1 U.S.C. Sec. 109, states in relevant part that:
 
 
 18
 [t]he repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.
 
 
 19
 The purpose of the federal savings clause is "[t]o eliminate from the federal system the pitfalls of abatement." United States v. Blue Sea Line, 553 F.2d 445, 447 (5th Cir.1977). The abatement doctrine potentially provides a "haven from prosecution" for those who violate a statute repealed after committing their offenses but prior to their convictions and sentences. United States v. Snowden, 677 F.Supp. 1108, 1110 (D.Kan.1988) (quoting United States v. Blue Sea Line, supra, at 447). To counteract this effect, the savings clause insures that penalties accruing while a statute was in force may be prosecuted after its repeal, absent an express provision to the contrary in the repealing statute. United States v. Brown, 429 F.2d 566, 568 (5th Cir.1970). The words "repeal of any statute" in the savings clause also have been held to encompass statutory amendments. See United States v. Mechem, 509 F.2d 1193, 1194 n. 3 (10th Cir.1975) (per curiam).
 
 
 20
 We find no distinction between the fact that the defendant in Breier was convicted and sentenced prior to the effective date of the Firearms Owners' Protection Act, while Schumann's conviction and judgment of forfeiture occurred after November 15, 1986. In United States v. Brown, supra, the defendant was convicted for violating the Federal Firearms Act of 1947. Prior to his conviction on June 10, 1969, but after the commission of his offense, the 1947 Act was repealed by the Gun Control Act of 1968, which became effective on December 16, 1968. The defendant claimed that the indictment, which was returned fourteen days after repeal of the former statute on which the indictment was based, rendered the indictment and subsequent conviction invalid. The former Fifth Circuit Court of Appeals affirmed the conviction, holding that the savings clause allowed prosecution for acts occurring prior to repeal of the old statute absent any contrary intention in either the former statute or the repealing statute. Brown, 429 F.2d at 568 (citing Bowen v. United States, 171 F.2d 533, 534 (5th Cir.1948)). Thus, the relevant time period is the commission of the violative act, not the date of indictment, conviction or sentence. Based on the same rationale, the court in Breier held the federal savings clause applicable to the definition of a dealer "engaged in the business" of selling firearms, preserving any forfeiture incurred under the former statute. United States v. Breier, 813 F.2d at 214-16. Like the defendants in Brown and Breier, Schumann's alleged violations occurred well before the 1986 Act became law.[3]
 
 
 21
 United States v. Orellanes, 809 F.2d 1526 (11th Cir.1987), does not support the appellant's argument that the new definition is controlling here. In that case the defendant, Orellanes, was convicted for possession of a firearm by a convicted felon. Before the 1986 amendments, a Supreme Court case, Dickerson v. New Banner Institute, Inc., 460 U.S. 103, 112-13, 103 S.Ct. 986, 991, 74 L.Ed.2d 845, 853-54 (1983) established that a defendant who had entered a guilty plea could be considered a "convicted felon" for purposes of 18 U.S.C. Sec. 922(h)(1). Section 101(5) of Pub.L. 99-308 changed the impact of Dickerson, requiring instead that a conviction "be determined in accordance with the law of the jurisdiction in which the proceedings were held." This court found Orellanes was a "convicted felon" under both Public Law 99-308 and Dickerson. Orellanes, 809 F.2d at 1528. It also concluded that the general savings provision preserved the penalties of the statute in effect when Orellanes committed the charged offenses. Id. More recently, in United States v. Kolter, 849 F.2d 541 (11th Cir.1988), we held that the savings clause did not apply to save the old definition of "convicted felon" where the legislation did not repeal a statute but merely changed the rule in case law which had interpreted the phrase. Kolter, 849 F.2d at 544. Unlike Orellanes, Kolter was a "convicted felon" under the old law but not under the new law. The rationale for not applying the savings provision is that the new definition of "convicted felon" has no effect on the punishment provided before the amendment, "but merely alters the class of persons for whom the specified conduct is prohibited." Id. (citing United States v. Breier, 813 F.2d at 216 n. 5). Such is not the case with the formerly undefined term "engaged in the business." This term operates to release or extinguish the forfeiture. The purpose of the savings clause is to preserve such penalties. It thus applies to the new definition in this case, giving the term prospective application only.
 
 
 22
 The judgment of conviction in No. 87-3099 is VACATED and REMANDED to the district court with directions to dismiss the indictment. The judgment of the district court in No. 87-3785 granting summary judgment in favor of the government is AFFIRMED.
 
 
 
 [1]
 Petitions for certiorari do not abate ab initio. Dove v. United States, 423 U.S. 325, 325, 96 S.Ct. 579, 579, 46 L.Ed.2d 531, 532 (1976), overruling Durham v. United States, 401 U.S. 481, 91 S.Ct. 858, 28 L.Ed.2d 200 (1971). Dove, however, applies only to petitions for certiorari and not to federal appeals of right. United States v. Pauline, 625 F.2d 684, 685 (5th Cir.1980)
 
 
 [2]
 Prior to the enactment of the 1986 Act, the term "engaged in the business" as it related to the sale of firearms was subject to judicial interpretation. See, e.g., United States v. Burgos, 720 F.2d 1520, 1527 n. 8 (11th Cir.1983) (possession of large supply of firearms and willingness to sell and ship them held sufficient); United States v. Wilmoth, 636 F.2d 123, 125 (5th Cir.1981) (government need only prove defendant's willingness and ability to procure firearms for customers); United States v. Shirling, 572 F.2d 532, 534 (5th Cir.1978) (profit motive not determinative); United States v. King, 532 F.2d 505, 510 (5th Cir.) ("selling and/or trading in firearms, as well as acquiring firearms for sale by purchase and/or trade"), cert. denied, 429 U.S. 960, 97 S.Ct. 384, 50 L.Ed.2d 327 (1976)
 
 
 [3]
 In United States v. Carter, 801 F.2d 78 (2d Cir.), cert. denied, 479 U.S. 1012, 107 S.Ct. 657, 93 L.Ed.2d 712 (1986), the Second Circuit Court of Appeals affirmed defendant's conviction for dealing in firearms without a license. Rather than relying on the savings clause to reach its decision, the court concluded that the new definition of "engaged in the business" could not be retroactively applied because "[t]he Owners' Act provides that the amendments to Sec. 921 do not become effective until 180 days after enactment, i.e., November 15, 1986." Carter, 801 F.2d at 83. Thus, the law in effect at the time the reviewing court rendered its decision was the Gun Control Act of 1968. We note that the prosecution also could have been preserved under the federal savings clause, since the defendant's violations occurred over a time period between 1984 and 1985