**Terry Jon MARTIN, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 92–1284.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 13, 1992.

Decided March 17, 1993.

Rehearing and Rehearing En Banc Denied April 28, 1993.

Andrea K. George, Asst. Federal Public Defender, Minneapolis, MN, argued, for appellant.

Jon M. Hopeman, Asst. U.S. Atty., Minneapolis, MN, argued, for appellee.

Before JOHN R. GIBSON and MAGILL, Circuit Judges, and BOGUE,* Senior District Judge.

* THE HONORABLE ANDREW W. BOGUE, Senior United States District Judge for the District of South Dakota, sitting by designation.

MAGILL, Circuit Judge.

Terry Jon Martin was convicted of being a felon in possession of a firearm in violation of 18 U.S.C. app. § 1202(a)(1). Based upon his prior felony convictions, he received the mandatory fifteen-year sentence prescribed by the sentence enhancement provision of the statute. Martin brought a petition pursuant to 28 U.S.C. § 2255 to vacate his sentence, arguing that two of his prior convictions could not constitute predicate offenses for sentence enhancement purposes following the repeal and amendment of certain provisions of the federal firearms laws. We affirm the district court's [1] decision that the general saving clause, 1 U.S.C. § 109, saved Martin's prosecution and sentence pursuant to § 1202 despite its repeal.

## I.

Martin was arrested for possession of a firearm on February 18, 1986, and indicted for violation of 18 U.S.C. app. § 1202(a), which prohibited possession of a firearm by a convicted felon, on February 24, 1986. As a basis for the charge and the fifteen-year sentence sought, the indictment listed four prior felony convictions: simple robbery (Minnesota, 1967); burglary (Minnesota, 1972); burglary (Minnesota, 1977); and burglary with aggravation (Iowa, 1977). After an unsuccessful interlocutory appeal, Martin pled guilty to the charge on January 25, 1988. On February 23, 1988, the district court sentenced Martin to fifteen years imprisonment pursuant to § 1202(a).

On November 23, 1990, Martin filed a motion under 28 U.S.C. § 2255 asserting that he should have been sentenced pursuant to 18 U.S.C. § 922(g) and § 924(e) rather than 18 U.S.C. app. § 1202(a), which had been repealed before his plea and sentencing. Under the new definition of "conviction" applicable to § 924(e), restoration of Martin's civil rights for the 1967 and 1972 Minnesota convictions made them ineligible for the sentence enhancement provision. The district court initially granted his mo-

tion, but then reversed itself and denied Martin's petition for habeas relief. This appeal followed.

## II.

■ Originally, federal firearms laws with respect to convicted felons appeared in two separate statutes, 18 U.S.C. app. § 1202 and 18 U.S.C. § 922. Section 1202(a) prohibited the receipt, possession, or transportation of a firearm by a convicted felon. Section 922(g) and (h) proscribed the shipping, transportation, or receipt of a firearm by a convicted felon. Under Supreme Court precedent, "convicted felon" was defined according to federal law. *Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 111–12, 103 S.Ct. 986, 991, 74 L.Ed.2d 845 (1983).

There is no question that Martin was eligible for the fifteen-year sentence he received under 18 U.S.C. app. § 1202(a), the law in effect when he committed the offense and was charged. This statute provided:

Any person who—

(1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony,

. . . .

and ... who receives, possesses, or transports in commerce or affecting commerce any firearm and who has three previous convictions by any court referred to in paragraph (1) of this subsection for robbery or burglary, or both, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years. . . .

18 U.S.C. app. § 1202(a).

The statute specifically stated that it did not apply to "any person who has been pardoned by the President of the United States or the chief executive of a State and has expressly been authorized by the President or such chief executive, as the case may be, to receive, possess, or transport in commerce a firearm." 18 U.S.C. app.

---

**1.** The Honorable Robert G. Renner, Senior United States District Judge for the District of Minnesota.

§ 1203(2). No exception existed, however, for state expunctions of criminal convictions or for a state's restoration of the individual's civil rights. Thus, at least prior to May 19, 1986, once convicted, Martin belonged to the general class of convicted felons prohibited from possessing a firearm and, because he had four prior felony burglary convictions, was subject to the fifteen-year minimum sentence.

On May 19, 1986, Congress passed the Firearm Owners Protection Act (FOPA), Pub.L. No. 99–308, 100 Stat. 449 (currently codified at 18 U.S.C. §§ 921, et seq.), which modified the law in two ways relevant to this case. First, it repealed § 1202 effective 180 days after enactment, and combined all restrictions relating to firearms and convicted felons into one section of the United States Code. Second, Congress amended the definition of "conviction," for purposes of the firearms statute, to read:

> What constitutes a conviction ... shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(20). This amendment also took effect 180 days after enactment.

Martin claims that because he did not plead guilty until after the amendments took effect, he may not be sentenced under § 1202 and should reap the benefit of the amended definition of conviction. Because his civil rights have been restored with respect to two of his prior convictions, he contends that he does not have the three prior "convictions" required for the fifteen-

year sentence under amended § 921(a)(20) and § 924(e).

The government contends that because the prosecution began before the repeal of § 1202, the general saving clause, 1 U.S.C. § 109, should act to save the prosecution under § 1202 despite its repeal. Moreover, the government claims that Congress demonstrated a specific intent that the new definition of conviction contained in § 921(a)(20) not apply to pending cases.

We must then decide whether Martin's prosecution could continue under § 1202(a) after its repeal, in which case he would not receive the benefit of the new definition of conviction,[2] or whether he must be prosecuted under amended § 922, and sentenced under § 924(e), and thus be subject to the new definition of conviction.

■ The general saving clause, 1 U.S.C. § 109, provides:

> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

It was enacted to overcome the common law rule that all pending prosecutions abate when a criminal statute is repealed. *Warden v. Marrero,* 417 U.S. 653, 660, 94 S.Ct. 2532, 2536, 41 L.Ed.2d 383 (1974). The government contends that, as the FOPA both repealed § 1202 and released criminal penalties existing under § 1202 through the new definition of conviction found in amended § 921(a)(20), convictions pending under § 1202 should be allowed to continue.

■ In order to escape the reach of the general saving clause, Martin first argues

---

**2.** In *United States v. Davis,* 972 F.2d 227 (8th Cir.1992), this court held that the amended definition of conviction in § 921(a)(20) does not apply to prosecutions continuing under § 1202(a) after the effective date of its repeal. *Davis* does not control the disposition of this case, however, because the court's analysis de-

pended upon an earlier, unpublished opinion involving the same defendant holding that the general saving clause saved prosecution under § 1202. As that unpublished opinion has no precedential value, we must address anew whether this prosecution may continue under § 1202 despite its repeal.

that the FOPA did not repeal § 1202(a), but merely recodified its terms in §§ 921, et seq. Thus, he contends, the changes were merely amendments, not covered by the general saving clause. Although we believe that FOPA did repeal § 1202,[3] we need not resolve the question whether Congress' actions constituted a repeal or an amendment, because the general saving clause applies to both. *See, e.g., United States v. Stillwell*, 854 F.2d 1045, 1048 (7th Cir.1988); *United States v. Jackson*, 835 F.2d 1195, 1197 (7th Cir.1987); *United States v. Breier*, 813 F.2d 212, 215 (9th Cir.1987); *United States v. Mechem*, 509 F.2d 1193, 1194 n. 3 (10th Cir.1975); *Warden v. Marrero*, 417 U.S. 653, 660, 94 S.Ct. 2532, 2536, 41 L.Ed.2d 383 (1974) (general saving clause applies to repeals followed by reenactments).

Having determined that the changes are such that the general saving clause could apply, we must determine whether the changes wrought in FOPA are such that the general saving clause does apply. Under *Marrero*, the Supreme Court's most recent analysis of the general saving clause, the determinative question is whether the repeal of § 1202, coupled with the new definition of conviction under § 921(a)(20), releases or extinguishes a "penalty, forfeiture or liability" and is thus saved by § 109. The court must determine first whether the contents of the old provision constituted a "penalty, forfeiture or liability." *Id.* at 660, 94 S.Ct. at 2536. According to the Supreme Court, "those terms 'were used by Congress to include all forms of punishment for crime.'" *Id.* at 661, 94 S.Ct. at 2537 (citing *United States v. Reisinger*, 128 U.S. 398, 402–03, 9 S.Ct. 99, 101, 32 L.Ed. 480 (1888)). Next the court must determine whether the repeal released or extinguished the penalty, as "the saving clause has been held to bar application of ameliorative criminal sentencing laws repealing harsher ones in force at the time of the commission of an offense." *Marrero*, 417 U.S. at 661, 94 S.Ct. at 2537.

We believe that the changes in FOPA had the effect of removing a punishment existing under § 1202, and thus, absent more, pending prosecutions under § 1202 are saved by the operation of § 109. The fifteen-year sentence applicable to persons in Martin's position under § 1202 certainly constituted a punishment within the definition suggested above. Moreover, the FOPA amendments constituted ameliorative criminal sentencing laws repealing harsher ones in force at the time of the commission of the offense. Prior to FOPA, persons possessing a firearm with three or more prior felony convictions were subject to the fifteen-year punishment regardless of state restoration of civil rights; after the amendments and the changed definition of conviction, they are not.[4] We agree

**3.** We are not persuaded by Martin's argument that the Supreme Court and this court have both treated FOPA as recodifying, rather than repealing, § 1201. *See United States v. Taylor*, 495 U.S. 575, 582–83, 110 S.Ct. 2143, 2150, 109 L.Ed.2d 607 (1990); *United States v. Lego*, 855 F.2d 542, 543 (8th Cir.1988). Neither court specifically considered the question whether the action constituted a repeal; thus, the statements do not bind. Moreover, Congress specifically termed its action a repeal: *see* Pub.L. No. 99–308, § 104(b), 100 Stat. 459 ("Title VII of the Omnibus Crime Control and Safe Streets Act of 1968 [18 U.S.C. app. §§ 1201, et seq.] is repealed.").

**4.** We are not persuaded by the argument, urged by Martin and accepted by some courts, that the amendment to § 921(a)(20) did not change the punishment, but merely altered the class of persons for whom certain conduct is prohibited. *See United States v. Schumann*, 861 F.2d 1234

(11th Cir.1989) (dicta); *United States v. Kolter*, 849 F.2d 541 (11th Cir.1988); *United States v. Breier*, 813 F.2d 212 (9th Cir.1987) (dicta). The contention that the change merely "alters the class for whom conduct is prohibited" proves the conclusion that we reach today: this statutory change has effectively released criminal punishment and liability. Moreover, some of the same courts urging this analysis concerning § 921(a)(20) have concluded that the new definition of who is a "dealer" engaged in the business of selling firearms for profit found in amended § 921(a)(21) and (22) does not apply retroactively because some who previously would have been liable are not liable under the new definition. *See, e.g., Schumann*, 861 F.2d at 1240; *Breier*, 813 F.2d at 216. Like the amendment to § 921(a)(21), the amendment at question here does remove the firearm disability from certain persons. We find no persuasive reason to believe that narrowing the class of persons for whom certain conduct is prohibited

with the First Circuit that "[t]he change made by the [repeal to § 1202 and the] amendment to 18 U.S.C. § 921(a)(20) seems to us to be the very type of substantive change contemplated by the saving statute, as it redefines the conduct that may result in liability." *United States v. Rumney,* 979 F.2d 265, 267 (1st Cir.1992).

Martin contends, however, that this conclusion is not the end of the inquiry. He relies upon a second line of cases which hold that the general saving clause does not save statutory changes or repeals which are primarily procedural, even though they effectively release substantive criminal penalties. *See United States v. Blue Sea Line,* 553 F.2d 445, 450 (5th Cir.1977); *United States v. Mechem,* 509 F.2d 1193 (10th Cir.1975). We do not believe that this line of cases validly may be applied to the statutory changes under review here.

Martin relies mainly for this proposition upon the Fifth Circuit's decision in *Blue Sea Line* and the Tenth Circuit's decision in *Mechem.* In *Blue Sea Line,* the court was faced with amendments to the Shipping Act of 1916 that converted all criminal prosecutions under the Act to civil and administrative actions. The court noted that the change had the effect of releasing criminal penalties, but stated that "cases [such as this one] will arise in which it may fairly be said that a statutory change both alters a penalty and modifies a procedure. In determining whether such a statute applies to all proceedings pending at its effective date, a court may inquire into the predominant purpose of the change—procedural modification or penal reassessment." 553 F.2d at 449–50. The court determined that Congress passed the amendments in question in order to enhance enforcement of the Act by lowering the burdens caused by evidentiary and burden of proof rules in criminal prosecutions. *Id.* at 450. Both the definition of the offense and the pre-

scribed punishment, however, remained the same. *Id.*

In *Mechem,* the court considered an amendment to the Federal Juvenile Delinquency Act. Before the amendment, juveniles charged with serious federal crimes could be tried as an adult. The amendment provided that, with few exceptions, juveniles under sixteen could not be tried as adults. While the change had the effect of ameliorating certain criminal penalties, the court found that its primary purpose was to remove juveniles altogether from the criminal justice system. The legislative history specifically noted that the change was not concerned with penalties but rather with "mandating a *new basic procedure* as to a class of offenders." 509 F.2d at 1195 (emphasis added). Moreover, the court found that Congress "recognize[d] the need for 'immediate and comprehensive action' " and that "Congress did not intend the ordinary criminal process to continue, through the saving statute, to reach juveniles not yet tried." *Id.* at 1196.

Martin contends that, like those in *Mechem* and *Blue Sea,* the changes here were primarily remedial and procedural. We disagree. Although Congress moved federal restrictions on firearms to a different section of the United States Code, it mandated no new procedures. Moreover, the changes that affect Martin's punishment are wholly substantive. Congress made state law relevant to the federal firearms laws when it was not before. Martin himself notes that Congress amended § 921(a)(20), in the words of the House Report, to "expand[ ] the class of persons eligible for relief from the disabilities imposed under the Gun Control Act. It benefits persons who have been convicted of a crime ... [and] have subsequently determined to have reformed." H.R.Rep. No. 495, 99th Cong., 2d Sess. 5 (1986), *reprinted in* 1986 U.S.C.C.A.N. 1327, 1331. Contrary to the situation in *Blue Sea* and

"releases or extinguishes a penalty" in one instance but not the other. Finally, we reject the argument that because the amendment merely changed a definition, it did not change the punishment. *See, e.g., Breier,* 813 F.2d at 216 (Noonan, J., concurring). The existence of a "convic-

tion," properly defined, is an element both of substantive liability and the sentence enhancement provision. It is simply an exercise in semantics to suggest that a change in such a definition does not effectively extinguish liability or punishment.

*Mechem,* we find no expression that Congress was primarily concerned with procedure, and not substance, when enacting the statutory changes at issue. Finally, as shown below, Congress manifested a specific intent that the new definition of conviction apply only prospectively, whereas the *Mechem* court found a specific congressional intent to apply the statutory change to pending cases. Thus, we hold that the general saving clause applies, and Martin was properly convicted and sentenced pursuant to § 1202(a).

█ Having held that Martin's pending prosecution under § 1202 was saved by the operation of § 109, it is clear that he is not entitled to the amended definition of conviction.

This court considered whether the amended definition of conviction contained in § 921(a)(20) applies to prosecutions continuing under § 1202 in *Davis v. United States,* 972 F.2d 227 (8th Cir.1992). In concluding that it did not, the court stated that § 921(a)(20) was a definitional provision applying only to Chapter 44 of Title 18, "which encompasses the current statute prohibiting felons from possessing firearms, § 922(g), and the current sentence enhancement provision, § 924(e)(1). Chapter 44 does not now *and never has* included § 1202(a). Thus, by its plain language, § 921(a)(20) does not apply to a § 1202(a) prosecution." *Id.* at 229.

A second line of analysis leads to the same conclusion. The general saving clause provides a rule of construction: that absent express intent, pending prosecutions continue under a repealed criminal statute. Just as the rule of construction is inapplicable when Congress expressly intends a repeal to have immediate effect, we believe that resort to this rule of construction may be unnecessary when Congress specifically provides that a statutory repeal will have purely prospective effect. As numerous courts have noted, Congress specifically provided that most of FOPA's provisions would become effective 180 days after its passage. *See* FOPA § 110(a), 100 Stat. 459. Congress specified, however, that certain provisions would apply to cases pending on the date of enactment. *See* FOPA § 110(b), 100 Stat. 459. We believe that the reference to pending cases in § 110(b) and not in § 110(a) can only mean that provisions governed by § 110(a) do not apply to conduct occurring before FOPA's effective date. Because the repeal of § 1202 and the amended definition of conviction in § 921(a)(20) are both controlled by the effectiveness provisions of § 110(a), we conclude that they apply only to conduct occurring after the effective date of the statute. *See United States v. Rumney,* 979 F.2d 265, 267 (1st Cir.1992); *Davis v. United States,* 972 F.2d 227, 230 (8th Cir.1992); *United States v. Brebner,* 951 F.2d 1017, 1023 & n. 6 (9th Cir.1992); *United States v. Balascsak,* 873 F.2d 673, 677 (3d Cir.1989) ("[T]here is no indication that the provision [amended § 921(a)(20) ] was meant to apply to violations of § 1202 which occurred prior to the effective date of the Act."); *United States v. Holley,* 818 F.2d 351, 353–54 (5th Cir.1987); *United States v. Pennon,* 816 F.2d 527, 529 (10th Cir.1987); *see also United States v. Breier,* 813 F.2d 212, 216 (9th Cir.1987) (FOPA provisions not specifically applicable to pending cases apply only prospectively).

We note that one circuit has disagreed with our conclusion. In *United States v. Kolter,* 849 F.2d 541 (11th Cir.1987), the Eleventh Circuit held that the general saving clause applied to save prosecutions pending under § 1202, *id.* at 544, but did not save the old definition of conviction under § 921(a)(20). *Id.* The court further concluded that, as there was no indication Congress intended the statute to apply only prospectively, it would apply the amended definition of conviction to pending cases. *Id.* at 545. The analysis above demonstrates the flaws in this reasoning. First, given the *Kolter* court's conclusion that the prosecution continued under § 1202, its conclusion that the new definition of conviction applied is in error. As noted in *Davis, supra,* this definition never applied to § 1202 and was not amended to so apply. Second, the analysis above demonstrates that Congress did clearly consider the question of retroactivity, and resolved it in favor of purely prospective operation.

 

Martin is not entitled·to the new definition of conviction, and his sentence was proper.

For all the foregoing reasons, we affirm the district court's decision to deny Martin's habeas petition.

JOHN R. GIBSON, Circuit Judge, dissenting.

I respectfully dissent. Judge Clark's well-reasoned opinion for the Eleventh Circuit in *United States v. Kolter,* 849 F.2d 541 (11th Cir.1988), convinces me we should reverse and remand.