UNITED STATES of America, Appellee,

v.

William CARTER, Richard Doyle, Anthony Host, and Randy Wolfgang, Defendants-Appellants.

Nos. 1430–1433, Dockets 86–1141 to 86–1144.

United States Court of Appeals, Second Circuit.

Argued June 18, 1986.

Decided Sept. 11, 1986.

Lawrence Shtasel, Asst. U.S. Atty., Brooklyn, N.Y. (Reena Raggi, U.S. Atty. for the E.D.N.Y., Jane Simkin Smith, Asst. U.S. Atty., Brooklyn, N.Y., on the brief), for appellee.

Darrell L. Paster, N.Y. City, for defendant-appellant William Carter.

Charles D. Lavine, Forest Hills, N.Y., submitted a brief for defendant-appellant Richard Doyle.

Allen Lashley, Brooklyn, N.Y., for defendant-appellant Anthony Host.

Thomas F. Clauss, Jr., N.Y. City, for defendant-appellant Randy Wolfgang.

Before MESKILL and KEARSE, Circuit Judges, and METZNER, District Judge.*

KEARSE, Circuit Judge:

Defendants William Carter, Richard Doyle, Anthony Host, and Randy Wolfgang appeal from judgments entered in the United States District Court for the Eastern District of New York, after a jury trial before Mark A. Costantino, *Judge*, convicting them of conspiring to engage in the business of dealing in firearms without a license, in violation of 18 U.S.C. § 371 (1982); engaging in the business of dealing in firearms without a license, in violation of 18 U.S.C. §§ 922(a)(1), 924(a), and 2 (1982); possessing and transporting in interstate commerce a machine gun not registered to any of the defendants, in violation of 26 U.S.C. §§ 5861(d), (j), and 5871 (1982), and

---

* Honorable Charles M. Metzner, Senior Judge of the United States District Court for the Southern District of New York, sitting by designation.

18 U.S.C. § 2; and convicting Host of possessing, as a prior convicted felon, a machine gun and other firearms that had been transported in interstate commerce, in violation of 18 U.S.C.App. § 1202(a)(1) (1982), and 18 U.S.C. § 3147(1) (1982). Carter, Doyle, and Host were sentenced to concurrent terms of imprisonment of seven, four, and five years, respectively, on each count on which they were convicted. Wolfgang was sentenced to a term of four years' imprisonment on each count on which he was convicted, to run concurrently, which sentence was suspended, and was placed on probation for a period of four years and fined $1000. On appeal, defendants contend principally that the evidence at trial was insufficient to establish that they had engaged in "dealing" in firearms within the meaning of 18 U.S.C. § 922(a)(1), and they challenge a number of the trial court's procedural and evidentiary rulings. Finding no merit in any of defendants' contentions, we affirm the judgments of conviction.

## I. BACKGROUND

The evidence at trial, viewed in the light most favorable to the government, established the following events. In November 1984, Special Agent Rodney Davis of the Federal Bureau of Investigation ("FBI"), operating in an undercover capacity, was introduced to Wolfgang, who worked with Carter, his uncle, at the TLC Garage in Queens, New York. Wolfgang told Davis that he and Carter could sell Davis a variety of weapons, including machine guns and rocket launchers, that were stored in Pennsylvania. Wolfgang said that Davis would have to negotiate such transactions with Carter, and that Carter made the deals and distributed the proceeds.

During the next several months, Davis negotiated with Carter for the purchase of various weapons. Many of the negotiations were carried out in tape-recorded telephone conversations. Carter told Davis he could provide weapons, confirmed that his sources for guns were in Pennsylvania, and several times told Davis he had sold guns and other weapons to several other buyers.

Shortly after their first meeting, Carter sold Davis two semi-automatic rifles, one having an obliterated serial number, at a total price of $2,650. Agents at the FBI laboratory restored the obliterated serial number and traced that rifle to a gun shop owned by Host's wife and operated from their home in Lykens, Pennsylvania. Doyle was identified as another of Carter's sources after Carter referred to one of his sources as "Rich," said he had been trying to reach one of his sources at the latter's aunt's house in Pennsylvania, and toll records revealed a number of calls between the TLC Garage and the Pennsylvania home of Richard Doyle's aunt at times shortly before and following conversations between Carter and Davis.

On March 25, 1985, Carl Toth, an employee at the TLC Garage, told Davis that Carter had been trying to reach Davis. Later that night, Carter called Davis and stated that a sample gun, a machine gun that had been altered to fire automatically which he would sell to Davis for $2,500, was being brought from Pennsylvania to New York. That night, Pennsylvania police officers observed Wolfgang, Doyle, and Host in a house leased to Carter in Tremont, Pennsylvania. These three defendants left the house, with Host carrying a brown cardboard box under his arm, and drove eastward toward New York. On March 26, 1985, Davis went to the TLC Garage, where Carter sold him a machine gun that he took from the trunk of the car in which Wolfgang, Host, and Doyle had been seen in Pennsylvania the night before. The gun was inside a brown cardboard box that was similar to the box Host had been seen carrying the night before. Shortly after this sale, Carter was arrested; Wolfgang, Doyle, and Host, who were also at the TLC Garage, were arrested along with Carter.

On the day of the arrests, law enforcement officers searched Doyle's Pennsylvania home and seized, *inter alia*, a revolver with an obliterated serial number, a revolver and a shotgun that had been stolen, and a letter addressed to "Rich" containing a

price list for various weapons. In July 1985, an agent of the Bureau of Alcohol, Tobacco and Firearms ("BATF") obtained a warrant for the search of Host's house, and seized, *inter alia,* eleven firearms from Host's bedroom. All of the seized items were admitted at trial.

The jury found all of the defendants guilty of conspiring to engage in the business of dealing in firearms without a license, in violation of 18 U.S.C. § 371; engaging in the business of dealing in firearms without a license, in violation of 18 U.S.C. §§ 922(a)(1), 924(a), and 2; possessing and transporting in interstate commerce a machine gun not registered to any of them, in violation of 26 U.S.C. §§ 5861(d), (j), and 5871, and 18 U.S.C. § 2; and found Host guilty of possessing, as a prior convicted felon, a machine gun and other firearms that had been transported in interstate commerce, in violation of 18 U.S. C.App. § 1202(a)(1), and 18 U.S.C. § 3147(1). Defendants were sentenced as described above, and these appeals followed.

## II. DISCUSSION

Defendants' principal contention on appeal is that the evidence was insufficient to convict them of "dealing" in, or conspiring to "deal" in, firearms within the meaning of § 922(a)(1). Among defendants' other challenges to their convictions are (1) their contention that the court should not have allowed into evidence the fact that two of the weapons seized from Doyle's home were stolen; (2) their contention that the court should have excluded the tape recording of the conversation between Davis and Toth in which the latter stated that Carter had been trying to reach Davis; (3) Host's contention that the evidence was insufficient to establish that he had previously been convicted of a felony; and (4) Wolfgang's contention that the evidence was insufficient to establish that he was not licensed to possess firearms. We have considered all of defendants' contentions and find them to be without merit. Only those listed above warrant discussion.

### A. *"Dealing" in Firearms*

■ Section 922(a)(1) of 18 U.S.C. provides, in pertinent part, that it is "unlawful ... (1) for any person, except a licensed dealer, to engage in the business of ... dealing in firearms or ammunition...." Defendants contend that because they made only two sales to Davis, four months apart, of disparate types of firearms, and because Carter did not initiate contact with Davis in the four-month hiatus between sales, the evidence at trial was insufficient to show that they engaged in a pattern of firearms sales sufficient to constitute "dealing" in such weapons within the meaning of § 922(a)(1). We disagree. Although the terms "engage in the business of" and "dealing in" imply that ordinarily there must be proof of more than an isolated transaction in order to establish a violation of this section, *see United States v. Tarr,* 589 F.2d 55, 59 (1st Cir.1978), we conclude that the proof was sufficient to show that defendant's conduct was within the intended scope of the statute.

Section 922(a)(1) was enacted as part of the Gun Control Act of 1968, Pub.L. No. 90–618, 82 Stat. 1213 (1968), which amended both Title IV of the Omnibus Crime Control and Safe Streets Act, Pub.L. No. 90–351, 82 Stat. 197 (1968) ("Omnibus Act"), regulating the sale of hand guns, and the National Firearms Act, Act of Aug. 16, 1954, c. 736, 68A Stat. 721 (1954), amended Pub.L. No. 85–589, 72 Stat. 1427 (1958), now codified at 26 U.S.C. §§ 5801–5872 (1982) ("Firearms Act"), regulating the sale of machine guns. The Gun Control Act reflected Congress's concern with, *inter alia,* rifles and shotguns, and its desire to strengthen the federal regulation of interstate traffic in any weapons that could be used in violent crimes. *See generally United States v. Tribunella,* 749 F.2d 104, 109–10 (2d Cir.1984).

Given this history, we agree with the interpretations given § 922(a)(1) by our sister circuits that have considered the nature of the activity that was intended to be encompassed by that section. The govern-

ment need not prove that dealing in firearms was the defendant's "primary business." *United States v. Wilmoth*, 636 F.2d 123, 125 (5th Cir.1981); *accord United States v. Powell*, 513 F.2d 1249, 1250 (8th Cir.), *cert. denied*, 423 U.S. 853, 96 S.Ct. 99, 46 L.Ed.2d 77 (1975); *cf. United States v. Goldberg*, 756 F.2d 949, 956 (2d Cir.1985) (defendant can be "engaged in dealing in" currency within meaning of 31 C.F.R. § 103.11 even if only "as a sideline"). Nor is there a "magic number" of sales that need be specifically proven. *See United States v. Perkins*, 633 F.2d 856, 860 (8th Cir.1981). Rather, the statute reaches "those who hold themselves out as a source of firearms." *Wilmoth*, 636 F.2d at 125; *see also United States v. Masters*, 622 F.2d 83, 88 (4th Cir.1980); *United States v. Swinton*, 521 F.2d 1255, 1259 (10th Cir. 1975), *cert. denied*, 424 U.S. 918, 96 S.Ct. 1121, 47 L.Ed.2d 324 (1976); *United States v. Day*, 476 F.2d 562, 567 (6th Cir.1973) (four sales over two months, other guns found in search of house, and agent's testimony that defendant said he could obtain guns provided sufficient evidence that defendant was engaged in dealing firearms). Consequently, the government need only prove that the defendant "has guns on hand or is ready and able to procure them for the purpose of selling them from to time to such persons as might be accepted as customers." *United States v. Berry*, 644 F.2d 1034, 1037 (5th Cir.1981); *accord United States v. Wilkening*, 485 F.2d 234, 235 (8th Cir.1973) (per curiam).

Further, the definition of "firearm" in § 921(a)(3), is sufficiently broad to encompass hand guns, rifles, machine guns, and other types of weapons. Having its origin in the Omnibus Act and repeated in the Gun Control Act, that definition includes "any weapon ... which will or is designed to or may readily be converted to expel a projectile by the action of an explosive." 18 U.S.C. § 921(a)(3). Thus, in order to prove a violation of § 922(a)(1), the government need not prove a pattern of dealing in a single type of weapon. If the defendant repeatedly holds himself out as a source for any type or types of weapon falling within the Gun Control Act's definition of firearm, the requisite pattern may be established.

Given these principles, we conclude that the evidence presented by the government was sufficient to establish that the defendants in the present case were engaged in, and were conspiring to engage in, the business of dealing in firearms within the meaning of § 922(a)(1). Viewing that evidence, as we must in considering an attack on its sufficiency, in the light move favorable to the government, *e.g., Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Esdaille*, 769 F.2d 104, 108 (2d Cir.), *cert. denied*, — U.S. —, 106 S.Ct. 258, 88 L.Ed.2d 264 (1985), we conclude that the jury could have found the following in addition to the actual sales of firearms to the undercover agent: that Wolfgang told the agent that a large quantity of weapons was available for sale; that Carter negotiated firearms transactions and divided up the proceeds between himself and Wolfgang; that Carter stated that he had a variety of firearms available in Pennsylvania and repeatedly attempted to reach his sources in order to sell weapons to the agent; that Carter repeatedly stated that he had sold firearms to buyers other than the agent; that Carter described the machine gun he sold to the agent as a "sample" and said that purchases in greater quantities could be made if that weapon was satisfactory; that at least two of the three weapons sold to the agent came from Host; that the search of Host's bedroom revealed a cache of 11 weapons; that Doyle was another source of the weapons offered for sale by Carter; and that the search of Doyle's house yielded three weapons and a price list for types of weapons that Carter had discussed with the agent.

These facts were ample to permit a rational jury to find beyond a reasonable doubt that the activities defendants had engaged in and had conspired to engage in constituted the business of dealing in firearms.

We find no merit in defendants' contention that their conduct has somehow been exonerated by Congress's recent enactment of the Firearms Owners Protection Act, Pub.L. No. 99–308, 100 Stat. 449 (1986) ("Owners Act"). Section 101 of the Owners Act provides further definition with respect to the term firearms "dealer" (defined in 18 U.S.C. § 921(a)(11) to include a person "engaged in the business of selling firearms") as follows:

(21) The term 'engaged in the business' means—

. . . . .

(C) As applied to a dealer in firearms, as defined in section 921(a)(11)(A), a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms, but such term shall not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms;

(22) The term 'with the principal objective of livelihood and profit' means that the intent underlying the sale or disposition of firearms is predominantly one of obtaining livelihood and pecuniary gain, as opposed to other intents, such as improving or liquidating a personal firearms collection.

Defendant's reliance on these provisions is misplaced.

First, even if we believed these amendments to § 921 so narrowed the scope of the activities covered by § 922(a)(1) that defendants' conduct would be excluded, we would not apply them retroactively, since such retrospectivity is plainly contrary to Congress's intent. The Owners Act provides that the amendments to § 921 do not become effective until 180 days after enactment, *i.e.*, November 15, 1986. *See* Pub.L. No. 99–308, § 110(a). Further, defendants' activities would appear to be within the reach of § 922(a)(1) even as modified by the Owners Act. The proof was sufficient to permit the jury to infer that dealing in firearms was "a" regular business of the defendants, that they devoted time and effort to that business principally for "livelihood and profit," and that their purchases and sales of firearms were "repetitive" rather than "occasional."

### B. *Other Contentions*

Defendants various challenges to the trial court's evidentiary rulings do not require extended discussion.

#### 1. *The Admissibility of the Fact that Some of the Guns Seized from Doyle's Home Had Been Stolen*

█ Among the items seized in the search of Doyle's home were a stolen revolver and a stolen shotgun. Defendants argue that the trial judge erred in failing to exclude from evidence the fact that these weapons had been stolen, contending that that fact was not relevant to the charges against them and was, in any event, unduly prejudicial to them. We find no error.

Rule 403 of the Federal Rules of Evidence grants the trial judge broad discretion to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice or confusion of the issues. *See United States v. Aulet,* 618 F.2d 182, 191 (2d Cir.1980). Since the trial judge is in a superior position to evaluate the likely impact of the evidence, we will not overturn his evidentiary rulings unless he has acted arbitrarily or irrationally. *Id.; United States v. Smith,* 727 F.2d 214, 220 (2d Cir.1984); *United States v. Robinson,* 560 F.2d 507, 514–15 (2d Cir. 1977) (en banc), *cert. denied,* 435 U.S. 905, 98 S.Ct. 1451, 55 L.Ed.2d 496 (1978). We find no such abuse here.

Notwithstanding defendants' challenge to the relevance of the fact that the weapons in question were stolen, Doyle's attorney opened the door to the admission of this fact in his opening to the jury. In that statement, in an effort to provide an innocent explanation for Doyle's possession of weapons, counsel argued that in rural ar-

eas of Pennsylvania such as that in which Doyle lived, the residents often possessed guns. The fact that Doyle possessed weapons that had been stolen, when viewed in conjunction with the obliteration of the serial number on one of the guns seized and the presence of a price list, increased the likelihood that Doyle did not possess weapons as an ordinary resident of rural Pennsylvania. The challenged evidence was relevant for this purpose, and we see no abuse of the trial court's discretion in determining that its relevance outweighed its prejudicial effect.

### 2. *The Admissibility of Toth's Statement*

■ Defendants contend that the court erred in permitting the government to play for the jury a recording of the March 25, 1985 telephone conversation between Davis and Toth, in which Toth stated that Carter had been trying to reach Davis. They argue that the recording constituted double hearsay inadmissible under any exception to the hearsay rule. This argument is meritless.

The recording of Toth's statement was not introduced as part of the government's direct examination of its witnesses but was offered in rebuttal of a line of defense that apparently sought to show that Davis had outrageously pressured Carter into selling him guns without any basis for believing that Carter was interested in doing so. *See United States v. Steinberg*, 551 F.2d 510, 515 (2d Cir.1977) (leaving open the question of whether "truly outrageous overreaching" by government agent could warrant acquittal); *Hampton v. United States*, 425 U.S. 484, 492–95, 96 S.Ct. 1646, 1651–53, 48 L.Ed.2d 113 (1976) (Powell, *J.*, concurring). In his opening statement, Carter's counsel had argued that Davis had kept at Carter until Carter yielded to his pressure. In cross-examining Davis, counsel repeatedly asked Davis such questions as whether he was not "troubled" by Carter's lack of responsiveness and "concerned" by an apparent lack of interest; whether he didn't begin to "doubt" Car-

ter's interest or start to "believe" Carter was not interested; whether it ever "enter[ed] his mind" that Carter was trying to avoid him.

The government offered Toth's statement to Davis that Carter had been trying to reach Davis not for its truth but in rebuttal of Carter's suggestion that Davis had pressured Carter into selling guns without any belief or basis for a belief that Carter was interested: to show "what was told to [Davis] and whether he believed it." While ordinarily the state of mind of the law enforcement officer might not be in issue, it clearly had been placed in issue here by Carter's cross-examination of Davis. As his counsel conceded, "it is hard to argue with the relevance of that. I am not arguing the relevance of that." Given the relevance of the state of Davis's knowledge and of the grounds for his belief, the court properly admitted Toth's statement for the limited purpose of showing that Davis was being given reason to believe that Carter was not avoiding him but instead wanted to deal with him. Thus, the evidence of Toth's statement was not hearsay as defined in the Federal Rules of Evidence. *See* Fed.R.Evid. 801(c).

For the same reason, the statement that Toth attributed to Carter was also not hearsay. It was included only to show what Davis was told, not to show that what he was told was true.

### 3. *The Record as to Host's Prior Conviction of a Felony*

■ Section 1202(a)(1) of 18 U.S.C. App. makes it unlawful for a "person who ... has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony" to receive, possess, or transport a firearm in interstate commerce. Host contends that the trial record is devoid of evidence that he had been previously convicted of a felony as required for conviction under this section. In light of the proceedings consented to by Host in the trial court, this argument borders on the frivolous.

In an effort to prove that Host had, prior to the seizure of the firearms from his home in July 1985, been convicted of a felony, the government sought to introduce certified copies of documents showing that in 1976 Host had been charged in Pennsylvania with attempted burglary, in violation of Pa.Cons.Stat.Ann. tit. 18, § 901 (Purdon 1985), and criminal trespass, in violation of Pa.Cons.Stat.Ann. tit. 18, § 3503(a) (Purdon 1985), and had been convicted of attempted criminal trespass. Host argued that the documents proffered by the government were insufficient to show that he had been convicted of a felony since (a) the Pennsylvania judgment of conviction did not refer to a particular subsection of the criminal trespass statute, (b) part of that statute, § 3503(b), established only a misdemeanor, and (c) Host had been given a sentence of only six months' probation and a fine of $200, which was consistent with a misdemeanor conviction.

In view of the ambiguity in the state court record, Judge Costantino suggested that he would telephone the judge who had presided over Host's case, Judge William P. Caldwell, who had since become a federal district judge for the Middle District of Pennsylvania. Host's counsel consented to this procedure, whereupon Judge Costantino made the proposed telephonic inquiry in the presence of all defense counsel. Judge Costantino was informed by Judge Caldwell that Host had been convicted of attempted criminal trespass in violation of § 3503(a), not § 3503(b), and that the violation of § 3503(a) was a felony punishable by imprisonment for a term of up to 10 years.

Following the receipt of this information, Judge Costantino admitted the documents proffered by the government into evidence. In charging the jury, the court stated that the crime of attempted criminal trespass was a felony under Pennsylvania law. Host did not object.

Because Host consented to the procedure followed by the trial court to ascertain whether the Pennsylvania judgment represented a felony conviction and did not object to the jury instruction, we find that the record in the district court adequately established that Host had been convicted of a felony.

### 4. The Sufficiency of the Evidence that Wolfgang Was Not Licensed To Deal in Firearms

At trial the government introduced BATF certificates to prove that none of the defendants was licensed in Pennsylvania or New York to deal in firearms, and that the machine gun they were alleged to have transported in interstate commerce was not registered to any of them. Wolfgang argues that the government's evidence was insufficient to convict him because the certificates indicating that he was not licensed identified him not as "Randy Wolfgang," as he was listed in the present indictment, but rather as "Randolph Marvin Wolfgang," and because the certificate indicating that the machine gun was not registered to him misspelled his last name as "Woolfgang." We find no basis for reversal.

Wolfgang did not object to the receipt of these certificates in evidence against him and does not here contend that they should have been excluded, but argues simply that they were insufficient to show that he had not complied with the pertinent licensing and registration requirements. We disagree. Once the documents were admitted, the assessment of their probative value was within the province of the jury. It was not impermissible for the jury to infer that the absence of any record of a license being issued to "Randolph Marvin Wolfgang" meant that this defendant Randy Wolfgang was not licensed to deal in firearms.

The misspelling of Wolfgang's name as "Randy Woolfgang" in the certificate of nonregistration of the machine gun also provides no basis for reversal. While the misspelling would have furnished ground for cross examination at trial, the relatively minor error in spelling does not warrant the inference that the search of BATF records was conducted with so little diligence that we should *sua sponte* hold that

admission of the certificate was plain error under Fed.R.Evid. 803(10). *See United States v. Yakobov,* 712 F.2d 20, 23–24 (2d Cir.1983) (certificate of search for license to Yakobov misspelling his name as "Jakubov" was not admissible since it did not evince the diligence required for admission under Rule 803(10) ). The probative value of the certificate was for the jury to assess, *see United States v. Mayo,* 705 F.2d 62, 76 n. 10 (2d Cir.1983) (jury could infer from certificate stating that gun was not registered to defendant on October 7, 1980, that gun was not registered to him on August 21, 1980), and the inference that the machine gun was not registered to Wolfgang was also supported by the deliberately surreptitious nature of defendants' activities and by evidence concerning how Wolfgang said he acquired weapons.

## CONCLUSION

We have considered all of the arguments raised by defendants on these appeals and find them without merit. The judgments of conviction are in all respects affirmed.