14-4126(L)
*United States v. Nayyar*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

### SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 12th day of July, two thousand seventeen.

PRESENT:    DENNY CHIN,
            CHRISTOPHER F. DRONEY,
                        *Circuit Judges*,
            KATHERINE B. FORREST,
                        *District Judge*.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,

                        *Appellee*,

                                                14-4126(L)
                v.                              16-4046(CON)

CONRAD STANISCLAUS MULHOLLAND,
AKA STAN, AKA CONRAD STAN,

                        *Defendant*,

PATRICK NAYYAR,

                        *Defendant-Appellant*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

---

\*       Judge Katherine B. Forrest, United States District Court for the Southern District of New York, sitting by designation.

FOR APPELLEE:                          SEAN S. BUCKLEY, Assistant United States
                                       Attorney (Stephen J. Ritchin, Anna M. Skotko,
                                       Assistant United States Attorneys, *on the brief*),
                                       *for* Joon H. Kim, Acting United States Attorney
                                       for the Southern District of New York, New
                                       York, New York.


FOR DEFENDANT-APPELLANT:               LAURA GROSSFIELD BIRGER (Stephanie B.
                                       Turner, *on the brief*), Cooley LLP, New York,
                                       New York.

Appeal from the United States District Court for the Southern District of New York (Sweet, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED,**

**ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-appellant Patrick Nayyar renews his appeal from a judgment entered October 31, 2014, after a jury trial, convicting him of conspiracy to provide and providing material support to a foreign terrorist organization, conspiracy to contribute and contributing goods to and for the benefit of Hizballah, and conspiracy to traffic firearms and ammunition, in violation of 18 U.S.C. §§ 371 and 2339B, and 50 U.S.C. § 1705(a). This case returns to us after we remanded the matter to the district court on October 14, 2015, for a post-trial hearing on issues related to Nayyar's motion for a mistrial and to suppress computer evidence.[1] On November 18, 2016, the district court issued an opinion adhering to its decision to deny Nayyar's motion. On December 2,

---

[1]     We did not reach Nayyar's argument that the evidence was insufficient to support his firearms and ammunition trafficking conspiracy conviction.

2

2016, Nayyar renewed his appeal.  We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

On September 24, 2009, the Federal Bureau of Investigation ("FBI") seized Nayyar's laptop computer from his home with the consent of his wife.  On October 29, 2010, the government obtained a search warrant for the computer.  Copies of the search warrant and supporting affidavit were produced in discovery to the defense on November 1, 2010.  At trial in March 2012, Special Agent Candace Hunter, an FBI forensic examiner, testified that she began her examination of the computer on December 2, 2009.  The next morning, Nayyar moved for a mistrial, arguing that the evidence obtained from his computer was the product of an illegal warrantless search. The district court denied Nayyar's motion for a mistrial, holding that Nayyar waived his right to challenge the computer evidence, and that, in any event, the "doctrine of inevitable discovery defeated any suppression motion."  Special App. 11.  We remanded for the district court to conduct a hearing on whether (1) Nayyar waived his right to challenge the evidence in question, (2) Nayyar's wife's consent was valid, and (3) the independent source doctrine applied.

In its November 18, 2016, opinion, the district court again denied Nayyar's motion for a mistrial and to suppress the computer evidence.[2]  The district court determined that Nayyar waived his right to challenge the computer evidence because

---

[2]      The district court did not conduct an evidentiary hearing, as the parties entered into a stipulation of facts, with numerous exhibits attached.  The parties and the district court agreed that the stipulated facts obviated the need for an evidentiary hearing.

3

his motion to suppress was untimely; Nayyar's wife's consent was invalid because the government did not, at the time of seizure, ask enough questions to determine whether she had authority to consent to a search of Nayyar's computer; and the independent source doctrine applied to the search of the computer. In his renewed appeal, Nayyar challenges (1) the denial of his motion to suppress the computer evidence and for a mistrial, and (2) the sufficiency of the evidence of a conspiracy to traffic in firearms and ammunition. We address each issue in turn.

1. **Motion to Suppress the Computer Evidence and for a Mistrial**

On appeal from the denial of a motion to suppress, we review the district court's legal conclusions *de novo* and its factual findings for clear error. *United States v. Schaffer*, 851 F.3d 166, 173 (2d Cir. 2017) (citing *In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 177, 198 (2d Cir. 2008)). We review mixed questions of law and fact *de novo*. *United States v. Rajaratnam*, 719 F.3d 139, 153 (2d Cir. 2013) (citing *United States v. Awadallah*, 349 F.3d 42, 65 (2d Cir. 2003)).

The independent source doctrine "permits the admission of evidence seized pursuant to an unlawful search if that evidence would have been obtained through separate, lawful means." *United States v. Vilar*, 729 F.3d 62, 83 n.19 (2d Cir. 2013) (citing *Murray v. United States*, 487 U.S. 533, 537 (1988)). When such evidence is obtained pursuant to a warrant issued after an illegal search, the independent source doctrine applies if, "(1) the warrant [was] supported by probable cause derived from sources independent of the illegal [search]; and (2) the decision to seek the warrant

4

[was] not . . . prompted by information gleaned from the illegal conduct." *United States v. Johnson*, 994 F.2d 980, 987 (2d Cir. 1993). If a motion to suppress is not made before trial and the movant cannot show good cause for the delay, the motion is untimely. *See* Fed. R. Crim. P. 12(b)(3)(C), (c)(3).

Prior to obtaining a search warrant, the FBI conducted a forensic examination of the computer pursuant to Nayyar's wife's consent. During the initial search, the examiner found possible child pornography, which halted his review. Three days later he learned that Nayyar's wife did not have the password for the computer. The government then obtained a search warrant before conducting a further search of the computer. The district court determined that the independent source doctrine applied to the search of the computer because the decision to seek a warrant was not motivated by the finding of possible child pornography, but rather was "to obtain evidence relevant to the pending charges against Nayyar and the months-long FBI investigation, as well as to buttress the legal authority for the search the FBI had begun before anyone from the FBI saw any of the contents of Nayyar's computer." Special App. 31-32.

The district court properly concluded that the independent source doctrine applied. First, as the district court found, the only reason the agents failed to apply for a warrant prior to beginning the initial search was their mistaken belief they had consent to conduct the search. Second, the search warrant application did not rely on anything discovered during the initial warrantless search. Third, any further search

5

for child pornography after the issuance of the search warrant was only to determine whether making a copy of the computer would violate federal child pornography laws, which prohibited the distribution and transportation of child pornography.

Nayyar argues that "[h]ad [the examiner] not seen the [possible child pornography] images during the initial search, . . . no warrant would have been sought." Appellant's Br. 27. The argument fails. While the discovery of possible child pornography led the government to realize Nayyar's wife's consent was invalid, "exclusion may not be premised on the mere fact that a constitutional violation was a 'but-for' cause of obtaining evidence." *Hudson v. Michigan*, 547 U.S. 586, 592 (2006); *accord Mosby v. Senkowski*, 470 F.3d 515, 522-23 (2d Cir. 2006) ("While [defendant's] arrest might, in some sense, have been a but-for cause . . ., this is not sufficient to justify exclusion."). Rather, as the district court concluded, if the government had not believed it had consent, it would have sought a warrant long before the examiner saw the suspected pornographic images.

Further, as the district court found, Nayyar waived his right to challenge the computer evidence because he should have realized, before trial, that the government conducted a warrantless search of his computer. First, on September 1, 2010, the government provided Nayyar with his wife's written consent to search the computer. Because Nayyar knew his wife did not have the computer's password, he should have known that a search premised on his wife's consent was unlawful. Second, the government twice provided Nayyar, on March 22, 2011, and February 24, 2012, with

6

a document specifying that the FBI began searching the computer's contents on either December 2, 2009, or December 3, 2009. Third, three of the documents that the government provided to Nayyar on March 14, 2012, revealed that the examination of his computer began in 2009. Finally, Nayyar received copies of the search warrant and supporting affidavit in discovery on November 1, 2010. Accordingly, Nayyar had ample notice of the warrantless search, and he could have moved to suppress long before the start of trial. The district court did not err in finding that Nayyar waived his right to challenge the computer evidence.

2. **Sufficiency of the Conspiracy Evidence**

A defendant challenging the sufficiency of the evidence bears a heavy burden because we will uphold a judgment of conviction if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Although we review sufficiency of evidence *de novo*, *United States v. Harvey*, 746 F.3d 87, 89 (2d Cir. 2014), the reviewing court must draw all permissible inferences in the government's favor and resolve all issues of credibility in favor of the jury verdict, *United States v. Kozeny*, 667 F.3d 122, 139 (2d Cir. 2011) (citing *United States v. Desena*, 287 F.3d 170, 176-77 (2d Cir. 2002)).

Count Five of the Superseding Indictment charged Nayyar and Conrad Mulholland with conspiring to traffic firearms and ammunition, in violation of 18

7

U.S.C. § 371.[3]  Nayyar argues there was insufficient proof from which a jury could conclude that he and Mulholland conspired to be illegal "dealers" in guns and ammunition.  *See* 18 U.S.C. § 922(a)(1)(A), 18 U.S.C. § 921(a)(21)(C).

A "dealer in firearms . . . [is] a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms."  18 U.S.C. § 921(a)(21)(C).  The definition does not extend to a person who makes occasional sales for a personal collection or hobby, *id.*, and the government need only prove that a person was "ready and able to procure [firearms] for the purpose of selling them from time to time," *United States v. Nadirashvili*, 655 F.3d 114, 119 (2d Cir. 2011) (quoting *United States v. Carter*, 801 F.2d 78, 82 (2d Cir. 1986)), *rev'd on other grounds*, *United States v. Spies*, 661 F.3d 1158 (2d Cir. 2011).

The evidence was sufficient to support a finding that Nayyar and Mulholland conspired to be illegal "dealers" of guns and ammunition.  *See* 18 U.S.C. § 921(a)(21)(C).  First, they dedicated "time, attention, and labor" to dealing in firearms. *Id.*  The government presented evidence that although Nayyar was not licensed to sell weapons, from late 1999 through 2001, Nayyar attempted to establish himself as a broker of weapons manufactured by Romtechnica, a Romanian company affiliated with a former Romanian general.  Thereafter, Nayyar paid for Mulholland, who Nayyar

---

[3]      Mulholland was also charged in Counts One through Four.  Prior to Nayyar's arrest, Mulholland travelled to the United Kingdom, and he remains a fugitive.

considered his business partner, to travel from the United Kingdom to the United States to assist Nayyar in firearms dealings.

Second, the government presented evidence that Nayyar held himself out as "ready and able to procure" firearms to sell. *Nadirashvili*, 655 F.3d at 119 (quoting *Carter*, 801 F.2d at 82). At trial, the government introduced numerous recorded meetings between Nayyar and a man that Nayyar thought was acting on behalf of Hizballah, but who was actually a confidential informant ("CI"), during which Nayyar offered to sell the CI M-16 rifles, M-18 Claymore mines, sniper rifles, and ammunition manufactured only for the Central Intelligence Agency. The government offered proof of more than a dozen meetings between Nayyar and the CI, lasting about twenty hours. The government introduced evidence that Nayyar supplied the CI with a handgun, a box of ammunition, and a pick-up truck. The government also introduced evidence that, during one of the meetings, Nayyar inquired as to when the CI would be traveling to Lebanon to meet with Hizballah, offering to provide the CI with a sample to show his contacts.

Moreover, the government presented evidence that Nayyar had the ability to deal firearms. He instructed the CI to call Hizballah to make arrangements for future transactions because, as he explained to the CI, his own "side" of the transaction was "one hundred percent" ready. Nayyar also told the CI that he could ship bulletproof vests directly to Lebanon. Accordingly, there was sufficient evidence to support Nayyar's conspiracy conviction.

9

\*       \*       \*

We have considered all of Nayyar's remaining arguments and conclude they are without merit.  Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk